UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA L. WINSTON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration<br><br>　　　　　Defendant. | No. EDCV 07-00301 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Patricia L. Winston ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. This matter is before the Court on the parties' Joint Stipulation ("Jt. Stip."), filed on November 1, 2007. For the reasons stated below, the decision of the Commissioner is AFFIRMED

**I.**

**PROCEDURAL HISTORY**

Plaintiff filed an application for DIB and SSI on October 3, 2003. (Administrative Record ("AR") 88). Plaintiff alleged that she is disabled due to mental illness and problems with her back, thyroid, lung and stomach. (AR 101). Plaintiff notes that her disability onset date was August 1, 2003. (AR 88).

The Agency denied Plaintiff's claims for benefits initially and upon reconsideration. (See AR 26-35). On April 12, 2005, Administrative Law Judge ("ALJ") Gaulz conducted a hearing to review Plaintiff's claims. (AR 556-83). On June 23 and September 12, 2005, ALJ David Ganly conducted supplemental hearings.[1] (AR 586-601). Plaintiff, who was represented by counsel, testified. (AR 560-64, 568-82). Two medical experts, Dr. Lowell Sparks and Dr. Michael Perrotti, and vocational expert ("VE") Corinne Porter also testified. (AR 566-68, 591-601). ALJ Ganly denied benefits on December 16, 2005. (AR 15-23). Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 11). On January 31, 2007, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (AR 6-8). Plaintiff commenced the instant action on March 7, 2007.

---

[1] At the April 12 hearing, the ALJ continued the case in order to obtain Plaintiff's medical records from doctors Samuel Dey and Peter Hilliard. (AR 583). At the June 23 supplemental hearing, the ALJ continued the case in order to obtain a psychiatric evaluation. (AR 586).

## II.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work that she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

(1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

---

[2] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

3

> (3) Does the claimant's impairment meet or equal one of the specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.
>
> (4) Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.
>
> (5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[3] age, education and work

---

[3] RFC is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

experience. Tackett, 180 F.3d at 1099-1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

### III.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process discussed above. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (AR 22). At step two, the ALJ found that Plaintiff's status post thyroid cancer in 1989 with no recurrence, Type A or B mild gastritis, history of asthma, irritable bowel syndrome and major depression, NOS (not otherwise specified) were severe impairments. (Id.). At step three, the ALJ ascertained that Plaintiff's impairments did not meet or equal a listing. (Id.).

At step four, the ALJ found that Plaintiff's allegations regarding her limitations were "not totally credible." (Id.). The ALJ assessed that Plaintiff had the RFC to perform "a significant range of light work." (AR 23). The ALJ determined that Plaintiff was not capable of performing her past relevant work and had no transferable skills

therefrom. (Id.). However, at step five, the ALJ determined that "[a]lthough [Plaintiff's] limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform." (Id.). Accordingly, the ALJ found that Plaintiff was not disabled. (Id.).

## IV.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**V.**

**DISCUSSION**

Plaintiff contends that the Commissioner's decision should be overturned for three reasons. First, she claims that the ALJ did not properly consider the opinion of functional status by Dr. Dey, the treating psychiatrist. (Jt. Stip. at 3-4). Second, she asserts that the ALJ misrepresented the evidence of Dr. Dey's clinical record. (<u>Id.</u> at 7-9). Finally, Plaintiff claims that the ALJ did not pose a hypothetical question to the VE that included all of Plaintiff's limitations and restrictions. (<u>Id.</u> at 11-13). The Court disagrees with Plaintiff's contentions and instead finds that the ALJ's decision should be affirmed.

**A.   Plaintiff's Claim That The ALJ Improperly Considered the Treating Psychiatrist's Opinion Does Not Warrant Remand**

Plaintiff complains that the ALJ improperly considered Dr. Samuel Dey's May 14, 2001 psychiatric evaluation of Plaintiff. (Jt. Stip. at 3). Plaintiff argues that the ALJ discussed Plaintiff's global assessment of functioning ("GAF") rating[4] as determined by Dr. Linda

---

[4] A GAF rating provides a rough estimate of an individual's psychological, social and occupational functioning and is used to reflect the individual's need for treatment. <u>Vargas v. Lambert</u>, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998); <u>see also</u> American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 32 (4th ed., text rev. 2000).

Smith, the examining psychiatrist, but not as determined by Dr. Dey, the treating psychiatrist.[5] (Jt. Stip. at 4). The Court disagrees.

Although the treating physician's opinion is entitled to deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999). However, if the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may reject the treating doctor's opinion only by providing "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester, 81 F.3d at 830 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

Similarly, the opinion of an examining physician is entitled to greater weight than that of a nonexamining physician. Lester, 81 F.3d at 830. The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Id. at 830-31. The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating

---

[5] Ninth Circuit cases distinguish among the opinions of three types of physicians and other health professionals: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). Lester v. Chater, 81 F.3d 821, 830 & n.7 (9th Cir. 1995).

his interpretation thereof, and making findings. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989).

Where the opinion of the claimant's treating physician is contradicted and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source itself may serve as substantial evidence. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995). "[I]t is then solely the province of the ALJ to resolve the conflict," <u>id.</u>, which requires a credibility determination. <u>Batson v. Comm'r</u>, 359 F.3d 1190, 1195 (9th Cir. 2004). An ALJ may discredit treating physicians' opinions that are conclusory, brief and unsupported by the record as a whole or by objective medical findings. <u>Id.</u>

The records of Dr. Dey's treatment begin in 2001, over two years prior to August 1, 2003, the alleged onset date of Plaintiff's disability. (AR 445-53). On May 14, 2001, Dr. Dey performed a mental status evaluation of Plaintiff, assigning her a GAF score of 50.[6] (AR

---

[6] GAF ratings range from 0 to 100. A rating of 41-50 denotes serious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). A rating of 51-60 denotes moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). A rating of 61-70 denotes some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well and maintaining some meaningful interpersonal relationships.
Each ten-point range encompasses both symptom severity and level of functioning. In situations where these components are discordant, the GAF rating reflects the lower of the two. For example, the GAF rating

453). At the time of her evaluation, Plaintiff chiefly complained of depression. Dr. Dey described Plaintiff "as a well developed, well nourished adult who appeared in no acute physical distress":

> She was mildly anxious but not agitated. She was neatly dressed and fairly groomed. She was not able to establish good eye contact. Her speech was clear, audible, understandable and not pressured. Thoughts were relevant and coherent, and verbalized in a free flowing manner. There was no evidence of a florid thought disorder. [Plaintiff] denied having hallucinations, or having a plan to harm herself.

(AR 453).

Dr. Dey prescribed Prozac for Plaintiff. (AR 453). Following this initial evaluation, the record reflects that Dr. Dey met with Plaintiff approximately twenty times at regular intervals between June 14, 2001 and April 14, 2005, during which he varied the prescribed medications and noted her responses. (AR 445-52). Initially, Plaintiff reported that the medication had "not been effective at relieving the target symptoms." (AR 451-52). On November 1, 2001, Dr. Dey began prescribing Celexa instead of Prozac. Plaintiff reported that the medication had been at least "partially effective" at all but one of her subsequent

---

for an individual who presents a significant danger to herself but who otherwise functions normally would be below 20. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed., text rev. 2000).

sessions.[7] (AR 445-51). On June 24 and September 16, 2004, Plaintiff reported that the medication had been "more effective" at relieving her symptoms. (AR 447).

The ALJ's decision contains a detailed and through summary of all of the medical evidence documented in the record. (AR 16-20). The ALJ mentioned that "[p]rogress notes from [Dr. Dey], covering the period from the alleged onset date through April 14, 2005 show medication follow-ups for symptoms including depression, angry outbursts, mood swings, anxiety, memory impairment, panic attacks and anhedonia." (AR 18). In addition, the ALJ noted that Plaintiff reported to Dr. Dey that "the medications are partially effective at relieving the symptoms." (Id.). The ALJ also noted that Plaintiff worked as a babysitter for eight hours per day for at least twenty months following the alleged onset of her disability.[8] (AR 20-21).

The ALJ reviewed the psychiatric consultative evaluation of Plaintiff performed by Reynaldo Abejuela, M.D., on December 27, 2003. Plaintiff informed Dr. Abejuela that she does household chores, drives, cooks and handles her own money. (AR 17). Plaintiff admitted to Dr. Abejuela that she "smokes marijuana about twice a week," but claims not

---

[7] On February 15, 2002, Plaintiff reported that Remeron, which Dr. Dey had prescribed to help her sleep, produced adverse side effects the day after she took it. (AR 450). Dr. Dey discontinued prescribing that medication.

[8] The ALJ found that Plaintiff's babysitting earnings of $552 to $648 per month during this period did not meet the minimum earnings requirement for the work to qualify as substantial gainful activity. (AR 16); accord 20 C.F.R. §§ 404.1574(b)(3), 416.974(b)(3).

to have any problem with substance abuse.[9] (AR 17). Dr. Abejuela's mental status examination showed mild depression and anxiety. However, Plaintiff's reasoning and comprehension were intact. She was oriented times four and able to convey her thoughts in a coherent manner. Plaintiff had impaired intermediate memory, but her short term and long term memories were intact. She was able to interpret a proverb and do similarities. Her judgment was intact and she could perform simple math. Ultimately, Dr. Abejuela opined that Plaintiff was able to follow simple and complex instructions and her social and occupational functioning was not severely impaired. (AR 17).

The ALJ also noted that Dr. Linda Smith performed a psychiatric consultative evaluation of Plaintiff on July 28, 2005. (Id.). Plaintiff told Dr. Smith that she had discontinued taking her antidepressants. (Id.). Plaintiff acknowledged to Dr. Smith that "she gets along well with other people." (Id.). Plaintiff stated that she had been performing childcare for many years and could handle some household chores such as dishwashing, cooking, driving a car and paying bills. (Id.). Dr. Smith remarked that Plaintiff "did very well on the mental status examination," and assigned Plaintiff a GAF rating of 61. (Id.; see also supra note 6).

The ALJ properly focused his evaluation on the evidence from the period in which Plaintiff claimed her disability. See 20 C.F.R. §§

---

[9] The ALJ rejected Plaintiff's subjective complaints, in part, due to her marijuana abuse. (AR 20); accord Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). This abuse is well-documented in Plaintiff's medical records. (See AR 258, 296, 541).

404.1512(c), 416.912(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is <u>during the time you say that you are disabled</u>. You must provide evidence . . . showing how your impairment(s) affects your functioning <u>during the time you say that you are disabled</u> . . . .") (emphasis added); <u>cf.</u> <u>Lombardo v. Schweiker</u>, 749 F.2d 565, 567 (9th Cir. 1984) (per curiam) (holding ALJ entitled to discount examination one and a half years after relevant time period for remoteness); <u>Macri v. Chater</u>, 93 F.3d 540, 545 (9th Cir. 1996) (according less weight to examination after relevant time period than one during it). During the relevant period, the ALJ fully considered the evidence from Dr. Dey, which did not directly contradict the evidence from either Dr. Abejuela or Dr. Smith.

The evidence in the record belies any claim that Dr. Dey's GAF rating indicated that Plaintiff could not work. Plaintiff claimed that at the time of her 2001 mental status evaluation, she worked forty hours per week performing child care for Riverside County, earning $648 per month. (AR 102, 107). Moreover, Dr. Dey's subsequent reports indicate that medication had improved Plaintiff's mental condition from its state in 2001.

Furthermore, the 2001 mental status evaluation itself provided no reliable evidence of disability. Dr. Dey listed no activities that Plaintiff's self-reported depression would limit or preclude. The overall GAF rating that Dr. Dey assigned provided inconclusive evidence on this point because it could have reflected the severity of Plaintiff's depression rather than any deficiency in her ability to work. (<u>See</u> <u>supra</u> note 6). In fact, Dr. Dey's report suggested that

13

Plaintiff faced no functional constraints; under Axis IV, which lists psychosocial and environmental problems, including occupational problems. Dr. Dey noted no occupational problems. (AR 453); see American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 31 (4th ed., text rev. 2000) (hereinafter, "DSM-IV").

Moreover, GAF ratings are not dispositive in social security cases. See 65 Fed. Reg. 50746, 50765 (August 21, 2000) (GAF ratings are not directly correlative to Social Security severity assessments). A GAF rating is only intended to be used to plan treatment and measure its impact. See DSM-IV at 32. A person's GAF rating will fluctuate from week to week, rendering a two-year old rating meaningless. See id. at 33. The ALJ's failure to reference the GAF rating in the RFC assessment thus does not, by itself, make the assessment inaccurate. See Howard v. Comm'r, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); see also England v. Astrue, 490 F.3d 1017, 1023 & n.8 (8th Cir. 2007) (upholding ALJ's finding that GAF rating was "not a particularly illuminating measure of [the claimant's] functioning in specific domains").

In sum, the ALJ's opinion properly rejected Dr. Dey's initial evaluation of Plaintiff as irrelevant. Moreover, the evidence from Dr. Dey's GAF rating did not contradict any of the ALJ's findings. Accordingly, Plaintiff's claim does not warrant remand.

B.   **<u>Plaintiff's Claim That the ALJ Misrepresented the Evidence of the Treating Psychiatrist's Opinion Does Not Warrant Remand</u>**

Plaintiff also complains that the ALJ misrepresented the clinical record of Dr. Dey's treatment of Plaintiff. (Jt. Stip. at 6-7). Plaintiff argues that the ALJ's "brief discussion" of this topic involved two "completely false" statements. (<u>Id.</u> at 7). The Court disagrees.

The ALJ analyzed the record with respect to Dr. Dey's treatment of Plaintiff as follows:

> The psychiatric treatment records from Dr. Dey . . . show partial response to psychiatric medication and no difficulty with social functioning. Dr. Dey did not perform any mental status examinations or administer psychological tests, but [Plaintiff] did very well when she did undergo mental status examination at the psychiatric consultative evaluation [with Dr. Smith].

(AR 20).

Plaintiff challenges both statements. First, Plaintiff argues that, contrary to the ALJ's statement, Dr. Dey's treatment notes indicate that she "does indeed suffer from a mental impairment that negatively impacts her social functioning, and ultimately, her ability to sustain employment in any labor market." (Jt. Stip. at 8-9). In addition, Plaintiff asserts that the ALJ "erroneously held that Dr. Dey

'did not perform any mental status examinations or administer psychological tests.'" (Id. at 9).

In support of Plaintiff's first argument, Plaintiff recites a litany of symptoms reported at Plaintiff's numerous sessions with Dr. Dey. (Id. at 7-8). However, these symptoms reflect what Plaintiff subjectively reported to Dr. Dey as opposed to Dr. Dey's objective medical opinion. In his notes for each session, Dr. Dey uniformly employed two phrases: "The patient reported that . . ." and "The patient indicated that . . . ." (AR 445-52). His language demonstrates that he was primarily reporting Plaintiff's subjective complaints, not rendering an independent diagnosis or evaluation of Plaintiff.

In his initial evaluation of her, Dr. Dey noted that Plaintiff reported similar symptoms. (AR 453). On that occasion, however, Dr. Dey did provide his own impressions of Plaintiff, as quoted above. (See supra p. 10). These remarks did not show any difficulty with social functioning, in accordance with the ALJ's finding. Moreover, Dr. Dey's consistent description of Plaintiff's medication as "partially effective" during the relevant time period, (AR 445-51), provided evidentiary support for the ALJ's finding that Plaintiff had a "partial response to psychiatric medication." (AR 20).

Plaintiff also attacks the ALJ for stating that "Dr. Dey did not perform any mental status examinations." (Jt. Stip. at 9 (quoting AR 20)). Plaintiff argues that the ALJ "misstated the record in order to justify his flawed decision, which is impermissible." (Jt. Stip. at 9).

The scope of a statement, even what seems a precise technical one, depends on its context. See Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ., __ U.S. __, 127 S. Ct. 1534, 1545-46, 167 L. Ed. 2d 449 (2007); see also Ali v. Fed. Bureau of Prisons, __ U.S. __, 2008 WL 169359 at *17 (U.S. Jan. 22, 2008) (Breyer, J., dissenting) ("When I call out to my wife, 'There isn't any butter,' I do not mean, 'There isn't any butter in town.'  The context makes clear to her that I am talking about the contents of our refrigerator.  That is to say, it is context . . . that sets the boundaries of time, place, and circumstance within which words such as 'any' will apply.").

Here, the ALJ had explained earlier that he was not considering the entire record of Dr. Dey's treatment, but only the portion that took place after the alleged onset of Plaintiff's disability.  (AR 18). Consequently, when the ALJ later stated that Dr. Dey had not conducted any mental status examinations, he clearly referenced the same period. Given the ALJ's intended temporal limitation on the scope of the word "any," his statement was factually correct.

Plaintiff's arguments that the ALJ misrepresented the evidence in the record do not withstand scrutiny.  This claim therefore does not merit remand.

**C.   Plaintiff's Claim That the ALJ Did Not Pose a Complete Hypothetical Question to the Vocational Expert Does Not Warrant Remand**

In her final claim, Plaintiff contends that the ALJ failed to include all of Plaintiff's limitations in the hypothetical question to

17

the VE about job availability. (Jt. Stip. at 11-12). Plaintiff asserts that the ALJ should have included a GAF score of 50, as determined by Dr. Dey, into the hypothetical job seeker's profile. (<u>Id.</u> at 12). The Court disagrees.

A hypothetical question posed to a VE must contain "<u>all</u> of the limitations and restrictions" that are supported by substantial evidence. <u>Magallanes</u>, 881 F.2d at 756; <u>see also</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 863 (9th Cir. 2001). Otherwise, the VE's testimony does not suffice to carry the Commissioner's burden at step five of proving ability to engage in work in the national economy. <u>Andrews</u>, 53 F.3d at 1044. Conversely, in forming the hypothetical, the ALJ need not include any limitations not supported by substantial evidence in the record. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 886 (9th Cir. 2006) (citing <u>Osenbrock</u>, 240 F.3d at 1163-65).

As discussed above, the ALJ properly disregarded the GAF rating of 50 by Dr. Dey because it occurred well in advance of the relevant time period and because other evidence indicated that Plaintiff could and did engage in substantial work activity at the time of the rating. As further discussed above, the alleged symptoms such as "depression, mood swings, irritability, anger outbursts, and social isolation and withdrawal," (Jt. Stip. at 13), were subjectively reported to Dr. Dey by Plaintiff and were not the doctor's objective medical findings. The ALJ reasonably found that Plaintiff's "subjective complaints and alleged limitations" were "not consistent with the treatment she receives" and thus "not fully credible." (AR 20). Plaintiff does not dispute this credibility finding. An ALJ need not incorporate into the hypothetical

subjective complaints and alleged limitations that he deems not credible.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 959-60 (9th Cir. 2002). Accordingly, this claim does not warrant remand.

## VI.
## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on counsel for both parties.

DATED: January 29, 2008.                        /S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE